**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MISSOURI
WESTERN DIVISION**

| | |
|---|---|
| **UNITED STATES OF AMERICA,** ) | |
| ) | |
| **Plaintiff,** ) | |
| ) | |
| v. ) | No. 08-00023-01/03-CR-W-DW |
| ) | |
| **SALLY MILLER,** ) | |
| **STEPHEN MILLER, and** ) | |
| **CHEMNUTRA, INC.,** ) | |
| ) | |
| **Defendants.** ) | |

**GOVERNMENT'S SENTENCING MEMORANDUM**

**I.  INTRODUCTION**

Sentencing is scheduled for Friday, February 5, 2010, at 10:00 a.m. before United States Magistrate Judge John T. Maughmer.  As more fully explained below, the Government recommends that the Court adopt the agreement of the parties and impose a sentence of three years probation on each defendant, to include certain conditions of probation for each defendant, all as set forth and agreed to by the parties in the plea agreement.

**II.  SENTENCING RECOMMENDATIONS**

**A.    Unresolved Guideline Disputes**

There are no unresolved disputes that affect calculation of the advisory guideline range.  The undisputed advisory guideline sentencing range is 0 to 6 months for both individual defendants and the undisputed total offense level is 6 for the corporate defendant.[1]

---

[1]  Doc. No. 40, ¶ 125 (defendant Sally Miller); Doc. No. 41, ¶ 129 (defendant Stephen Miller); Doc. No. 42, ¶ 102 (defendant ChemNutra, Inc.).

All three defendants, however, dispute certain portions of the presentence report that do not affect calculation of the advisory guideline sentencing range.[2] For the reasons set forth below, the Government respectfully urges the defendants to withdraw these objections but failing that, asks the court to overrule these objections.

In their plea agreement, all three defendants admit and agree that other than paragraph 26 of the introduction and background section of the indictment, all the facts and allegations set forth in the indictment are true and correct.[3] The defendants also explicitly acknowledged, understood, and agreed that dismissed counts of the indictment and any uncharged related criminal conduct would be considered in determining their sentence.[4]

These plea agreement terms foreclose the defendants from raising the factual objections which are currently before the court. Every factual objection can be traced to one or more allegations in the indictment which the defendants either admitted was true or agreed could be used to determine their sentence. By raising these objections, the defendants could be viewed as being in breach of the terms of the plea agreement. In case of breach, the Government is released from its obligations under the agreement, the defendants remain bound by their guilty pleas, and the defendants are sentenced without the benefit of the promises made by the Government.[5]

---

[2] These objections are set forth in the addendum to each presentence report.

[3] Doc. No. 31 at page 2, ¶ 3

[4] Doc. No. 31 at page 4, ¶ 4.

[5] Doc. No. 31 at page 15, ¶ 19.

Government's Sentencing Memorandum
United States v. Sally Miller, Stephen Miller, and ChemNutra, Inc.
No. 08-00023-01/03-CR-W-DW  -  Page 2

UNITED STATES ATTORNEY
Charles Evans Whittaker Courthouse
400 East Ninth Street, Suite 5510
Kansas City, Missouri 64106
Telephone: (816) 426-3122
Telefax: (816) 426-4210

Case 4:08-cr-00023-DW   Document 44   Filed 01/23/10   Page 2 of 14

In an exercise of considerable prosecutorial discretion and grace, the Government (1) agreed to let the defendants plead guilty to misdemeanor offenses so they could avoid the likely prospect of a felony conviction if this matter were to proceed to trial, and (2) agreed to recommend imposition of probationary sentences so neither individual defendant would face any realistic prospect of a prison sentence.  We stand by these agreements and recommendations.  However, when a defendant lodges factual objections that are contrary to the letter and spirit of such an agreement, the Government's recourse is to consider whether such defense conduct constitutes a breach of the plea agreement and whether the Government should seek to be relieved of its obligations under the plea agreement.  The Government has no present desire to pursue such a course of action and hopes instead that the defendants will withdraw their objections and eliminate any need for such action by the Government.

It also appears that the defense objections are based on a fundamental mistake, misunderstanding, or misapprehension about the relationship between the offenses of conviction and the sentencing process.  It is true that the defendants plead guilty to strict liability misdemeanor offenses for which there is intent requirement.  It is also true that the defendants have never admitted that they knowingly imported wheat gluten that was misbranded and adulterated with melamine.  In fact, the Government does not contend and does not ask the Court to conclude that the defendants had actual knowledge that the imported wheat gluten was adulterated with melamine.

But the fact that the defendants did not actually know that the imported wheat gluten was adulterated with melamine does not prevent the Court, or anyone else for that matter, from concluding that the defendants acted recklessly or with more than mere negligence.  The

Government's Sentencing Memorandum
United States v. Sally Miller, Stephen Miller, and ChemNutra, Inc.
No. 08-00023-01/03-CR-W-DW  -  Page 3

UNITED STATES ATTORNEY
Charles Evans Whittaker Courthouse
400 East Ninth Street, Suite 5510
Kansas City, Missouri 64106
Telephone: (816) 426-3122
Telefax: (816) 426-4210

Case 4:08-cr-00023-DW   Document 44   Filed 01/23/10   Page 3 of 14

independent investigation of the Probation Office correctly concludes that the undisputed facts in the record before this Court — indeed the facts agreed to by the defendants in their plea agreement — permits the Court to draw an inference of reckless conduct that goes beyond the admissions made by the defendants. The prism that the Court views this case through is not limited to the admissions made by the defendants. The defendants specifically agreed that the Court could consider much more than their admissions in determining what sentence to impose. The defendants specifically agreed that in determining what sentence to impose, the Court was not bound by the agreement of the parties and the Court could consider any reliable information, including hearsay, in making sentencing determinations.[6]

These defendants are the beneficiaries of a plea agreement with generous terms in their favor. It would serve no good purpose to threaten the loss of those terms by engaging in a factual dispute that could be viewed as conduct that breaches the plea agreement. The Government is prepared to put on evidence at the sentencing hearing, if necessary, to provide whatever predicate is needed to have the Court overrule the defense objections. It is our hope, instead, that such an effort will not be necessary and the defendants will withdraw their objections. Barring that, the Government will ask the Court to overrule the defense objections following whatever evidentiary presentation is required to satisfy the Court.

---

[6] Doc. No. 31 at ¶¶ 10 g and i, pages 10-11; ¶ 6 h, page 6.

Government's Sentencing Memorandum
United States v. Sally Miller, Stephen Miller, and ChemNutra, Inc.
No. 08-00023-01/03-CR-W-DW - Page 4

UNITED STATES ATTORNEY
Charles Evans Whittaker Courthouse
400 East Ninth Street, Suite 5510
Kansas City, Missouri 64106
Telephone: (816) 426-3122
Telefax: (816) 426-4210

B. **Sentencing Considerations under 18 U.S.C. § 3553(a)**

1. **The History and Characteristics of the Defendant**

The court is required to consider the defendant's history and characteristics prior to imposing sentence. 18 U.S.C. § 3553(a)(1).

a. **Sally Miller**

Sally Miller is a 43 year old Chinese national with an engineering degree in food chemistry from Hangzhou University in China.[7] She obtained an MBA in 2000 through a joint education program between Beijing Polytechnic Academy and the City University of Seattle.[8] She acquired extensive experience in the importing and exporting of food goods, having worked in that business between 1994 to 2000 for a company in Beijing, China.[9] She is certified as an ISO-9000 chief auditor. ISO stands for International Organization for Standardization and ISO-9000 is an international consensus on good quality management practices that provide a set of internationally recognized standardized requirements for a quality management system in any organization.[10] So that ChemNutra, Inc., could claim the advantages of being a woman-owned and minority-owned business, she was titled as the corporate President of ChemNutra, Inc., and owned 51% of its stock.[11] She took an active role in the management of ChemNutra, Inc., and was not the President of the

---

[7] Sally Miller PSR at ¶ 17.

[8] Sally Miller PSR at ¶ 109.

[9] Sally Miller PSR at ¶ 113.

[10] Sally Miller PSR at ¶ 17.

[11] Sally Miller PSR at ¶ 16.

Government's Sentencing Memorandum
United States v. Sally Miller, Stephen Miller, and ChemNutra, Inc.
No. 08-00023-01/03-CR-W-DW  -  Page 5

UNITED STATES ATTORNEY
Charles Evans Whittaker Courthouse
400 East Ninth Street, Suite 5510
Kansas City, Missouri 64106
Telephone: (816) 426-3122
Telefax: (816) 426-4210

Case 4:08-cr-00023-DW   Document 44   Filed 01/23/10   Page 5 of 14

company in name only. Sally Miller was the person at ChemNutra, Inc., who by training, education, experience, and cultural familiarity, assumed primary responsibility for all business dealings with the Chinese companies and individuals that supplied the contaminated wheat gluten that gave rise to this prosecution. Sally Miller is practically the only person from ChemNutra, Inc., who is involved in the voluminous e-mails that relate to the importation of the contaminated wheat gluten, and establish the business relationship between ChemNutra, Inc., and its Chinese suppliers.[12] Because of her training, experience, and cultural familiarity, Sally Miller was specifically responsible for handling quality control with the Chinese manufacturers that did business with ChemNutra, Inc.[13] Sally Miller was a "hands-on" participant in ChemNutra, Inc.'s business.

Sally Miller married defendant Stephen Miller in July 2002, and they have a four year old daughter.[14] Although the business activities of ChemNutra, Inc., have ceased in the wake of the events which gave rise to this prosecution,[15] Sally and Stephen Miller now jointly own a new company, EOS Direct, which is in the business of importing into the United States raw materials and

---

[12] Sally Miller PSR at ¶¶ 40, 42-58, 60-63, 66-69.

[13] Sally Miller PSR at ¶ 65.

[14] Sally Miller PSR at ¶ 104.

[15] Sally Miller PSR at ¶ 112.

Government's Sentencing Memorandum
United States v. Sally Miller, Stephen Miller, and ChemNutra, Inc.
No. 08-00023-01/03-CR-W-DW  -  Page 6

UNITED STATES ATTORNEY
Charles Evans Whittaker Courthouse
400 East Ninth Street, Suite 5510
Kansas City, Missouri 64106
Telephone: (816) 426-3122
Telefax: (816) 426-4210

Case 4:08-cr-00023-DW   Document 44   Filed 01/23/10   Page 6 of 14

ingredients used in food products.[16] Sally Miller is the corporate president of EOS Direct. She reports a net worth of nearly $500,000.00.[17]

### b. Stephen Miller

Stephen Miller is a 56 year old United States citizen with both a J.D. and an MBA degree from Columbia University in New York.[18] Since leaving Columbia University in 1980 with these degrees, he has been involved in a number of successful business endeavors.[19] In addition to being fluent in Spanish, he has established skills in management, computer technology, and finance.[20] He holds real estate broker and dealer licenses in New York and California.[21] He also reports a net worth of nearly $500,000.00.[22] Stephen Miller is the CEO of EOS Direct, the new company that he and wife, defendant Sally Miller, formed and own.[23] Stephen Miller also served as the CEO of ChemNutra, Inc., and owned 49% of its stock.[24] While Sally Miller was responsible for negotiating with the Chinese companies that did business with ChemNutra, Inc., it appears that

---

[16] Sally Miller PSR at ¶ 111.

[17] Sally Miller PSR at ¶¶ 114-117.

[18] Stephen Miller PSR at ¶ 111.

[19] Stephen Miller PSR at ¶¶ 115-117.

[20] Stephen Miller PSR at ¶ 112.

[21] Id.

[22] Stephen Miller PSR at ¶¶ 118-121.

[23] Stephen Miller PSR at ¶ 113.

[24] Stephen Miller PSR at ¶ 16.

Government's Sentencing Memorandum
United States v. Sally Miller, Stephen Miller, and ChemNutra, Inc.
No. 08-00023-01/03-CR-W-DW - Page 7

UNITED STATES ATTORNEY
Charles Evans Whittaker Courthouse
400 East Ninth Street, Suite 5510
Kansas City, Missouri 64106
Telephone: (816) 426-3122
Telefax: (816) 426-4210

Case 4:08-cr-00023-DW   Document 44   Filed 01/23/10   Page 7 of 14

Stephen Miller was the spokesperson for the company here in the United States and he assumed primary responsible for the financial and internal business matters associated with running ChemNutra, Inc. For example, when ChemNutra was called to testify before Congress during the public outcry associated with the contaminated wheat gluten, Stephen Miller was the public face for ChemNutra, Inc., not Sally Miller.

   c.  **ChemNutra, Inc.**

ChemNutra, Inc., was a closely-held corporation wholly owned by defendants Sally and Stephen Miller. It was nothing more than the legitimate corporate shell through which Sally and Stephen Miller conducted their business of buying food and food components in China, importing those Chinese items into the United States, and then selling those items to companies in the United States.[25]

  **2.**  **The Nature and Circumstances of the Offense**

The Court is required to consider the nature and circumstances of the offenses of conviction, 18 U.S.C. § 3553(a)(1), as well as the fact that the advisory guideline range expressly permits imposition of sentence of probation, 18 U.S.C. § 3553(a)(3) and (a)(4). The Court also is required to consider the need for the sentence to reflect the seriousness of the offense, promote respect for the law, and provide just punishment for the offense. 18 U.S.C. § 3553(a)(2)(A).

The defendants pled guilty to misdemeanor violations of the Food, Drug, and Cosmetic Act (FDCA). Particularly in this case, the nature, circumstances, and seriousness of misbranding and adulteration crimes go far beyond the misdemeanor label that is attached to them.

---

[25] ChemNutra PSR at ¶ 16.

Government's Sentencing Memorandum
United States v. Sally Miller, Stephen Miller, and ChemNutra, Inc.
No. 08-00023-01/03-CR-W-DW - Page 8

UNITED STATES ATTORNEY
Charles Evans Whittaker Courthouse
400 East Ninth Street, Suite 5510
Kansas City, Missouri 64106
Telephone: (816) 426-3122
Telefax: (816) 426-4210

Case 4:08-cr-00023-DW Document 44 Filed 01/23/10 Page 8 of 14

The FDCA has been recognized as one of the most important pieces of legislation ever enacted by Congress under the Commerce Clause. *United States v. Article of Drug Consisting of 47 Bottles, More or Less,* 320 F.2d 564, 567 n.9 (3rd Cir. 1963) (citing *United States v. 7 Jugs, Etc., of Dr. Salsbury's Rakos*, 53 F. Supp. 746, 752-53 (D. Minn. 1944)); *American Meat Inst. v. Ball*, 424 F. Supp. 758, 765 (W.D. Mich. 1976). Federal courts at all levels regard the statute as *sui generis* by virtue of its "salutary" and "remedial" qualities, and have lauded the statute's "overriding purpose to protect the public health." *United States v. Article of Drug . . . Bacto-Unidisk*, 394 U.S. 784, 798 (1969); *United States v. Undetermined Number of Unlabeled Cases*, 21 F.3d 1026, 1028 (10th Cir. 1994); *United States v. Varela-Cruz*, 66 F. Supp. 2d 274, 279 (D.P.R. 1999). Among the most outspoken advocates of the FDCA have been the justices of the Supreme Court, who, through Mr. Justice Frankfurter, explained that "[t]he purposes of this legislation . . . touch phases of the lives and health of people which, in the circumstances of modern industrialism, are largely beyond self-protection." *United States v. Dotterweich*, 320 U.S. 277, 280 (1943).

Most important, the Supreme Court has construed the FDCA broadly to effect its purpose of protecting the public health. Regard for the public health "should infuse construction of the [FDCA] if it is to be treated as a working instrument of government and not merely as a collection of English words." *Id.* As a result of courts giving a consistent pro-consumer interpretation to the FDCA, there is no doubt that the FDCA deserves a liberal construction despite the strict interpretation ordinarily given criminal statutes. *United States v. Shabbir*, 64 F. Supp. 2d 479, 483 (D. Md. 1999) (holding that the rule of lenity did not apply because the FDCA was unambiguous); *see also United States v. Johnson & Towers, Inc.*, 741 F.2d 662, 666 (3rd Cir. 1984).

Government's Sentencing Memorandum
United States v. Sally Miller, Stephen Miller, and ChemNutra, Inc.
No. 08-00023-01/03-CR-W-DW - Page 9

UNITED STATES ATTORNEY
Charles Evans Whittaker Courthouse
400 East Ninth Street, Suite 5510
Kansas City, Missouri 64106
Telephone: (816) 426-3122
Telefax: (816) 426-4210

Case 4:08-cr-00023-DW   Document 44   Filed 01/23/10   Page 9 of 14

In the interest of the larger good, the FDCA puts the burden of preventing violations of the Act upon the persons who have the authority to prevent dangers to the public. Thus, the FDCA imposes not only a positive duty to seek out and remedy violations when they occur, but also a duty to implement measures that will insure that violations will not occur. These requirements of foresight and vigilance "are no more stringent than the public has a right to expect of those who voluntarily assume positions of authority in business enterprises whose services and products affect the health and well-being of the public that supports them." *United States v. Park*, 421 U.S. 658, 672 (1975).

Because of the neglect of these defendants, because they failed to exercise foresight and vigilance, the public suffered greatly. Thousands of innocent pets became seriously ill and many suffered death. It is impossible to talk about this case without realizing that the defendant's criminal conduct posed and caused substantial physical injuries, death, and psychological injuries.

Even so, the advisory guideline range for this type of misdemeanor offense is 0 to 6 months, and the Sentencing Guidelines expressly authorize imposition of a sentence of probation and do not require imposition of a sentence of imprisonment.[26] Since the Guidelines specifically authorize imposition of a sentence of probation, the Government believes that such a sentence sufficiently reflects the seriousness of the offense, promotes respect for the law, and provides just punishment for the offense.

---

[26] U.S.S.G. §§ 5B1.1(a)(1) and 5C1.1(b).

Government's Sentencing Memorandum
United States v. Sally Miller, Stephen Miller, and ChemNutra, Inc.
No. 08-00023-01/03-CR-W-DW - Page 10

UNITED STATES ATTORNEY
Charles Evans Whittaker Courthouse
400 East Ninth Street, Suite 5510
Kansas City, Missouri 64106
Telephone: (816) 426-3122
Telefax: (816) 426-4210

Case 4:08-cr-00023-DW   Document 44   Filed 01/23/10   Page 10 of 14

### 3. The Need to Protect the Public From Future Crimes by the Defendant

The Court is required to consider whether a particular sentence is necessary to protect the public from further crimes of the defendant. 18 U.S.C. § 3553(a)(1)(C). The United States concedes that a term of incarceration is not needed in order to protect the public from future crimes by these defendants.

### 4. The Need to Afford Adequate Deterrence to Criminal Conduct

The Court is required to consider what type of sentence is needed to afford adequate deterrence to criminal conduct. 18 U.S.C. § 3553(a)(2)(B). The United States believes that a sentence of probation is sufficient to deter future criminal conduct by these defendants and by others similarly situated who might be tempted to engage in similar criminal conduct.

### 5. Balancing of All § 3553(a) Factors - Recommended Sentence

On balance, after weighing the relevant § 3553(a) factors, the Government believes that a sentence of 3 years probation, which is a permissible sentence within the advisory guideline sentencing range, is a reasonable sentence with respect to the counts of conviction. We recommend, however, that a sentence of probation include certain conditions, all of which were agreed to by the parties in the plea agreement. Specifically, that the term of probation include a provision that obligates the defendants to provide full cooperation with the United States Food and Drug Administration (FDA) if requested to do so in any matter within the purview of the FDA. Other recommended conditions dealing with monetary or financial penalties are set forth below.

Government's Sentencing Memorandum
United States v. Sally Miller, Stephen Miller, and ChemNutra, Inc.
No. 08-00023-01/03-CR-W-DW - Page 11

UNITED STATES ATTORNEY
Charles Evans Whittaker Courthouse
400 East Ninth Street, Suite 5510
Kansas City, Missouri 64106
Telephone: (816) 426-3122
Telefax: (816) 426-4210

Case 4:08-cr-00023-DW   Document 44   Filed 01/23/10   Page 11 of 14

C.   **Recommended Sentence for Monetary Penalties**

   1.   **Fine**

With respect to defendant ChemNutra, Inc., the Government recommends imposition of a fine in the amount of $25,000.00, and that the court order ChemNutra, Inc., to pay the $25,000.00 in full immediately.[27]

With respect to defendants Sally Miller and Stephen Miller, the Government recommends imposition of a fine against each of them in the amount of $5,000.00.[28] Consistent with the terms of the plea agreement, the Government recommends that the Court order this amount to be due and payable immediately, but permit the individual defendants to pay their fines over the term of any court-ordered probation or supervised release.[29]

---

[27] Doc. No. 31 at page 7, ¶ 8. In its plea agreement, ChemNutra, Inc., agreed to pay the $25,000.00 fine in full on or before the date of sentencing. Obviously, a defendant cannot pay a fine prior to the time the court imposes one. However, should ChemNutra fail to pay a court-imposed fine on the sentencing date, it would constitute a breach of the plea agreement and the United States would be forced to seek an appropriate remedy from the Court.

[28] The defendants consented and agreed to imposition of separate $5,000.00 fines against each of them. Doc. No. 31 at page 7, ¶ 8.

[29] Doc. No. 31 at page 7, ¶ 8.

Government's Sentencing Memorandum
United States v. Sally Miller, Stephen Miller, and ChemNutra, Inc.
No. 08-00023-01/03-CR-W-DW  -  Page 12

UNITED STATES ATTORNEY
Charles Evans Whittaker Courthouse
400 East Ninth Street, Suite 5510
Kansas City, Missouri 64106
Telephone: (816) 426-3122
Telefax: (816) 426-4210

Case 4:08-cr-00023-DW   Document 44   Filed 01/23/10   Page 12 of 14

### 2. Special Assessment

The required $250.00 mandatory special assessment should be imposed with respect to defendant ChemNutra, Inc.,[30] and the required $50.00 mandatory special assessment should be imposed with respect to each individual defendant.[31]

### 3. Restitution

As noted in the plea agreement, the Government requests that no order of restitution be imposed by the Court, and further requests that the Court specifically find that the restitution-related determinations and orders issued and made in the multi-district civil litigation based on the same facts which gave rise to this criminal prosecution, i.e., the $24 million cash settlement reached in United States District Court for the District of New Jersey, styled as *In re: Pet Food Product Liability Litigation*, MDL Docket No. 1850, Civil Action No. 07-2867, negates any need for entry of an additional restitution order in this case.[32] The Probation Office supports and agrees with this recommendation.[33]

---

[30] Doc. No. 42 at ¶ 110.

[31] Doc. No. 41, at ¶ 136 (defendant Stephen Miller) and Doc. No. 40, at ¶ 132 (defendant Sally Miller).

[32] Doc. No. 31 at pages 7-8, ¶ 8.

[33] Doc. No. 42 at ¶ 136 (defendant ChemNutra, Inc.); Doc. No. 41, at ¶ 140 (defendant Stephen Miller) and Doc. No. 40, at ¶ 136 (defendant Sally Miller).

Government's Sentencing Memorandum
United States v. Sally Miller, Stephen Miller, and ChemNutra, Inc.
No. 08-00023-01/03-CR-W-DW  -  Page 13

UNITED STATES ATTORNEY
Charles Evans Whittaker Courthouse
400 East Ninth Street, Suite 5510
Kansas City, Missouri 64106
Telephone: (816) 426-3122
Telefax: (816) 426-4210

### III. MOTION TO DISMISS

The defendants pled guilty to Counts One and Fourteen of the indictment. Consistent with the terms of its plea agreement with the defendants, the Government moves to dismiss all remaining counts of the indictment filed against all three defendants.[34]

### IV. CONCLUSION

For the foregoing reasons, the United States respectfully requests that the Court impose sentence in accordance with the recommendations made herein.

Respectfully submitted this 23rd day of January 2010.

>Beth Phillips
>United States Attorney
>
>*s/ Phillip Eugene Porter*
>
>Phillip Eugene Porter
>Chief, Criminal Division

### V. CERTIFICATE OF SERVICE

The undersigned hereby certifies that a copy of the foregoing was delivered on January 23, 2010, to the CM-ECF system of the United States District Court for the Western District of Missouri for electronic delivery to all counsel of record.

>*s/ Phillip Eugene Porter*
>Phillip Eugene Porter
>Chief, Criminal Division

---

[34] Doc. No. 31 at page 7, ¶ 8.

Government's Sentencing Memorandum
United States v. Sally Miller, Stephen Miller, and ChemNutra, Inc.
No. 08-00023-01/03-CR-W-DW  -  Page 14

UNITED STATES ATTORNEY
Charles Evans Whittaker Courthouse
400 East Ninth Street, Suite 5510
Kansas City, Missouri 64106
Telephone: (816) 426-3122
Telefax: (816) 426-4210

Case 4:08-cr-00023-DW   Document 44   Filed 01/23/10   Page 14 of 14